STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-931

LONNIE AND JACKIE RHOADS

VERSUS

SIGNATURE LINCOLN-MERCURY

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2001-2799
HONORABLE JULES DAVID EDWARDS, III, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion,
Judges.

**Cooks, J., concurs for the reasons expressed by the trial judge.**

**AFFIRMED FOR DIFFERENT REASONS.**

**Craig Alan Davis**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 231-5351**
**Counsel for Plaintiff/Appellee**
      **Lonnie and Jackie Rhoads**

**Daniel M. Landry, III**
**P. O. Box 3784**
**Lafayette, LA 70502**
**(337) 237-7135**
**Counsel for Defendant/Appellant**
      **Signature Lincoln-Mercury**

GREMILLION, Judge.

In this case, the defendant, Signature Lincoln-Mercury, appeals the judgment in favor of the plaintiffs, Lonnie and Jackie Rhoads, rescinding the sale of a 1997 Lincoln Continental. For the following reasons, we affirm for reasons other than those set out by the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2001, the Rhoads purchased a used Continental from Signature for $13,800. On March 3, 2001, the Rhoads attempted to trade in the car at another dealership, whereupon they allege they were informed for the first time that the vehicle had been in an accident. In their petition, they claim that the salesperson at Signature, Scott Strenz, did not inform them that the vehicle had been wrecked despite their numerous requests for such information. The Rhoads filed suit for recision after demands for a refund from the dealership were unsuccessful.

The trial court, in its reasons for ruling, stated:

> Plaintiffs sued to rescind the sale of a 1997 Lincoln Continental asserting the vehicle had certain redhibitory defects. Specifically, they complain about 1) the way the car rattles, 2) the way the car drives, 3) that the car has been in a collision which dramatically reduced its value and that collision was not disclosed to them, and 4) that turning the ignition switch often does not start the car which then requires the plaintiff to push start the car.

> This court finds the first three complaints do not describe redhibitory defects because they were not latent. The fourth complaint does describe a redhibitory defect and recision of the sale is the appropriate remedy.

The trial court went on to award the Rhoads: 1) the return of the purchase price with interest from the time it was paid, 2) the reimbursement of the reasonable expenses

1

occasioned by the sale, and, also 3) reasonable attorney fees, which the court set at $4,674.

Signature timely appealed to this court and assigns as error:

1. The trial court's determination that the ignition problem was a redhibitory defect.

2. The trial court erred in failing to apply the waiver of warranty executed by the Rhoads as to preclude the claim asserted herein.

3. The trial court erred in rescinding the sale, as an alternative the trial court should have decreed a diminution of the purchase price rather than rescinding the sale.

## REDHIBITION

On appeal, we will not overturn the trial court's determination that a redhibitory defect existed unless its finding is clearly wrong. *Goodman v. Roberts*, 587 So.2d 807 (La.App. 3 Cir. 1991).

The issue before us is whether the faulty ignition switch constituted a redhibitory defect such that the sale should be rescinded. Louisiana Civil Code Article 2520 states:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that the buyer would still have bought it but for a lesser price. The existence of such defect limits the right of a buyer to a reduction of the price.

Louisiana Civil Code Article 2521 states:

2

The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things.

The trial court found that Signature was aware of the existence of the intermittent starting defect and that it did not tell the Rhoads about this latent defect. It further found that this latent defect existed at the time of delivery and that the Rhoads could not discover it by simple inspection. Finally, the trial court stated: "This defect is redhibitory because it rendered the car useless as a means of reliable luxury transportation, which was its intended purpose." After reviewing the record, we disagree and find that the trial court was clearly wrong in finding that the ignition switch problem constituted a redhibitory defect in the Continental. The ignition switch problem does not rise to the level of a redhibitory defect when the Rhoads purchased a used car "as is" with "no warranty".

Lonnie testified that he purchased the Continental from Strenz for $13,800. When asked what problems Lonnie was having with the car he responded that it does not start despite numerous attempts and that you have to "push it around in neutral and cram it into park and rock the motor or do something and sometimes it will start." He further testified that, for the first month they owned the car, his wife complained that it made a lot of highway noise and that it rattled. Regarding mechanical problems he stated, "it didn't ever refuse to start in the first month." However, he stated that after that it would fail to start—that it would crank, but not start. Lonnie testified that they brought the car to a repair shop, other than the one owned by Signature, because he did not want Signature working on it after they lied about not telling him the car had been wrecked. He also stated that he knew he

3

purchased the car "as is." He stated that, since they purchased it, he and his wife had put 20,000 miles on the car.

Jackie testified similarly and stated that she no longer drives the vehicle because of the starting difficulties. She specifically stated that she asked Strenz if the vehicle had been wrecked and that he replied "no." She stated that she did not have anyone inspect the vehicle because she attended high school with Strenz and trusted him. She stated that she was told that an old man had owned the vehicle and could no longer keep it after he had a stroke and that the car had 19,000 miles on it. She further testified that she knew there was no warranty on the vehicle. Jackie said she used the car without incident for the first month traveling back and forth from Milton to Lafayette for her job. However, she stated that, by the second month, the car was not driving properly, was rattling, and the steering wheel was shaking. She stated that the car had been towed twice and the fuel pump had been replaced.

Joseph Earl Corbett, who was the used car manager at Robinson Brothers Lincoln-Mercury in Baton Rouge, Louisiana, testified that he appraised the Rhoads' Continental when they brought it in to trade for another vehicle. He stated that the car had been wrecked and he appraised it at $9,000 on March 3, 2001. He stated that, if the car had not been wrecked, it would have been valued at $12,000 wholesale and $14,500-15,000 retail.

Andrew Citron, a body shop manager, inspected the Continental at the request of the Rhoads. He testified that the vehicle had been lightly damaged and had undergone repairs to the front end.

4

Neal Huval, the owner of a paint and body shop, also inspected the Continental at the Rhoads' request on March 12, 2001. Huval described the front end damage to the car as extensive, probably in the range of $3,000.

Raymond Martin, Jr., a friend of the Rhoads, testified that he had to assist Lonnie half a dozen times in starting the car by pushing it. He testified that they would put the car in neutral, push the car backwards, and then put it in park, and only then sometimes would the car start.

Byron Lasalle, Lonnie's employer, described one incident when he had to help Lonnie push the car around to get it to start. He also stated he was familiar with the numerous problems Lonnie had with the car.

Richard Orgeron, the previous owner of the Continental, testified that one day Jackie knocked on his door and asked him if he had problems with the car. Orgeron testified that, later that same day, he met with both Lonnie and Jackie and told them that the problem he had with the car was that it would not start. Orgeron stated that while he owned the car, there were three instances when it would not start and after each one he brought the car to Signature. He stated that Signature told him they could not find a problem because the computer did not recognize one.

Orgeron further testified that he purchased the car for $28,000 from Signature and that he owned it for approximately fifteen months. He also stated that he asked an employee of Signature whether the car had been wrecked and that he was told it had not been. He stated that he traded in the car for $9,000 to $10,000 and bought a new one from Signature. He stated that he was so disgusted with the car that he did not mind the substantial decrease in value that occurred in a year's time.

Strenz testified that Jackie asked him if the car had been wrecked and that he replied that, to his knowledge, he had no idea if it had been wrecked. He stated that he did not go and check with anyone to see if the car had been wrecked. Plaintiff's counsel then presented Strenz with Signature's own documents stating that the car had undergone paint and body work. However, Strenz stated that he does not go by the documents and that he was unaware that the vehicle had been wrecked.

Both Lonnie and Jackie testified that they fully understood that they were buying the car "as is" and that it would have no warranty. Moreover, the fact that the Rhoads have put 20,000 miles on the car certainly indicates that the car is indeed fit for its intended use. Lonnie also testified that the the only time the car had been in the shop was when the fuel pump was changed. Thus, we do not find that the ignition switch problem rose to the level of a redhibitory defect.

However, it is clear from the record that the Rhoads specifically asked if the Continental had been wrecked and that they were specifically told that it had not been. We agree with the Rhoads that the sale should be rescinded for lack of consent based on Signature's failure to tell the Rhoads that the car had been previously wrecked. Signature knew the car had been wrecked and failed to disclose it to the Rhoads. The paperwork from the Auto Auction clearly states that the car had undergone paint and body repairs. Furthermore, Corbet, Citron, and Huval all testified that anyone with experience in the used-car business would have easily recognized, via a simple inspection, the replaced parts on the car due to paint over-spray and the different labels on the new parts. Whether Strenz personally knew that the car had been wrecked is irrelevant; the dealership's knowledge is imputed to him.

6

We agree with the Rhoads that the issue is not whether the repairs and replacement parts were a latent defect, but rather, whether the Rhoads consented to the sale and whether that consent was vitiated by error or fraud.

Louisiana Civil Code Article 1949 states: "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." We find that the Rhoads' consent was vitiated by error, as they specifically inquired if the car had been wrecked, they testified that they would not have purchased the car if they knew it had been wrecked, and Signature knew or should have known that the Rhoads would not have purchased the car if they knew it had been wrecked.

In *Monte v. Harvey*, 596 So.2d 278 (La.App. 3 Cir. 1992), we found that the dealership's knowledge that the car had been wrecked and re-built would be imputed to the salesperson and that the salesperson's declaration to the buyer that "to his knowledge the car had not been wrecked" constituted fraud. Similarly, we agree that the Rhoads are entitled to rescission of the sale and that Signature is liable for damages and attorney fees.

Signature argues that diminution of the price is an alternative remedy. Although we note that Signature may have been due a credit for use pursuant to La.Civ.Code art. 2545, as the trial court noted, Signature did not present any evidence of the value of the Plaintiffs' use of the car. We agree with the trial court's finding on this issue, and without evidence of the use attributed to the Rhoads, we are unable to award Signature a credit. Thus, this assignment of error is without merit.

7

## CONCLUSION

The trial court's judgment rescinding the sale of the 1997 Lincoln Continental and awarding the plaintiffs-appellees, Jackie and Lonnie Rhoads, attorney fees is affirmed for different reasons. All costs of this appeal are taxed against the defendant-appellant, Signature Lincoln-Mercury.

**AFFIRMED FOR DIFFERENT REASONS.**